UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

Relates to:  *FTC v. Volkswagen Group of America, Inc*., No. 3:16-cv-1534 (N.D. Cal).

**Case No. 3:15-md-2672**

**[PROPOSED] PARTIAL STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).  The FTC and Defendant stipulate to the entry of this Partial Stipulated Order for Permanent Injunction and Monetary Judgment ("Order"), which partially resolves the FTC's allegations in its Complaint.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), through the advertising, marketing, offering for sale, sale, offering for lease, lease, and distribution of certain Volkswagen and Audi TDI vehicles in the United States and its territories.

3.      Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

- 1 -

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

4. This Order resolves all of the FTC's allegations related to Defendant's 2.0-liter TDI "Clean Diesel" vehicles, except it reserves the FTC's allegations regarding lessees of Defendant's 2.0-liter TDI "Clean Diesel" vehicles whose leases terminated before September 18, 2015. This Order does not resolve the FTC's allegations regarding Defendant's 3.0-liter TDI "Clean Diesel" vehicles.

5. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

6. Defendant and the FTC waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Approved Emissions Modification**" means a modification to an Eligible Vehicle approved by the Environmental Protection Agency (EPA) and the California Air Resources Board (CARB) in accordance with Appendix B of the DOJ Consent Decree.

B. "**Approved Emissions Modification Restitution**" means the monetary compensation that Defendant will pay to Eligible Owners who elect an Approved Emissions Modification under the Settlement Program, specified in the second column of Attachment 1A or 1C, modified by any Mileage Adjustment in Attachments 2A through 2C, if applicable.

C. "**Buyback**" means the process by which an Eligible Owner may sell an Eligible Vehicle to Defendant (or other entity authorized by Defendant) under the Settlement Program in exchange for Buyback Restitution. If an Eligible Owner does not possess title to the Eligible Vehicle, for Defendant to acquire title and the Buyback to occur, Defendant and the Eligible

Owner must complete the steps required by Section VII.G.1 and the claim application pursuant to Section XIII.

D.      "**Buyback Restitution**" means the monetary compensation that Defendant will pay to Eligible Owners who elect a Buyback under the Settlement Program, specified in the first column of Attachments 1A or 1C, modified by any Mileage Adjustment in Attachments 2A through 2C, if applicable.

E.      "**Claims Supervisor**" means the entity appointed by the Court to oversee the claims process.

F.      "**Class Action**" means certain coordinated class, mass, and individual actions, however named, that are coordinated pursuant to 28 U.S.C. § 1407 in the United States District Court for the Northern District of California in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672-CRB (N.D. Cal.) and reflected in the Consolidated Consumer Class Action Complaint filed in this action on February 22, 2016 (Docket No. 1230).

G.      "**Class Action Settlement Agreement**" means the Consumer Class Action Settlement Agreement and Release filed on June 28, 2016 by the attorneys representing certain current and former owners and lessees of certain Volkswagen and Audi branded vehicles with 2.0-liter TDI engines in this action, *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672-CRB (N.D. Cal.).  If the Court approves the proposed Consumer Class Action Settlement Agreement and Release, "Class Action Settlement Agreement" shall refer to that agreement as and in the form it is ultimately approved and entered by the Court.

- 3 -

H.      "**Consumer Payment**" means any payment under the Settlement Program made directly to an Eligible Consumer or to a lender on behalf of an Eligible Owner for the purpose of satisfying an outstanding Loan Obligation related to an Eligible Vehicle.

I.      "**Defeat Device**" means "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless:  (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles[,]" 40 C.F.R. § 86.1803-01, or "any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [the Emission Standards for Moving Sources section of the Clean Air Act], and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use," 42 U.S.C. § 7522(a)(3)(B).

J.      "**Defendant**" means Volkswagen Group of America, Inc. ("VWGoA"), including VWGoA d/b/a Volkswagen of America, Inc. and Audi of America, Inc., as well as each of their successors and assigns.

K.      "**DOJ Consent Decree**" means the Draft Partial Consent Decree filed in this action, *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.), by the United States on June 28, 2016.  If the Court approves the Draft Partial Consent Decree, "DOJ Consent Decree" shall refer to that decree as and in the form it is ultimately approved and entered by the Court.

L.      "**DOJ Emissions Modification Notice**" means the notice(s) that are required to be sent pursuant to Subsection 3.2 of Appendix A to the DOJ Consent Decree to notify affected Eligible Owners and Eligible Lessees for whom Defendant has a mailing or email address of either the availability or non-availability of an Approved Emissions Modification for certain Eligible Vehicles.

M.      "**Effective Date**" means the date the Court approves and enters this Order, the DOJ Consent Decree, or the Class Action Settlement Agreement, whichever is latest.

N.      "**Eligible Consumer**" means any Eligible Owner, Eligible Seller, or Eligible Lessee, as defined by this Order, who has not excluded himself or herself from the Settlement Program.  Consumers who exclude themselves from the Settlement Program are eligible for the remedies set forth in Subsection 5.1 of Appendix A to the DOJ Consent Decree.

O.      "**Eligible Lessee**" means (1) the current lessee or lessees of an Eligible Vehicle with a lease issued by VW Credit, Inc.; (2) the former lessee or lessees of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. as of September 18, 2015 and who surrendered or surrenders the leased Eligible Vehicle to Volkswagen; or (3) the current owner of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. as of September 18, 2015 and who acquired ownership of the previously leased Eligible Vehicle at the conclusion of the

- 5 -

lease after June 28, 2016.  For avoidance of doubt, no person shall be considered an Eligible Lessee by virtue of holding a lease issued by a lessor other than VW Credit, Inc.

P.     "**Eligible Lessee Restitution**" means the monetary compensation, specified in Attachments 3A or 3C, that Defendant will pay to Eligible Lessees under the Settlement Program, in addition to a Lease Termination or an Approved Emissions Modification.

Q.     "**Eligible Lessee Restitution Adjustment**" means any fees charged upon termination of a lease for excess wear and use and excess mileage at the point of vehicle surrender, and other amounts due, such as delinquent lease payments and related late payment fees, or costs associated with tickets and tolls, pursuant to the lease contract.

R.     "**Eligible Owner**" means the registered owner or owners of an Eligible Vehicle on June 28, 2016, or the registered owner or owners who acquire an Eligible Vehicle after June 28, 2016, but before the deadline to submit a claim under the Settlement Program, except that the owner of an Eligible Vehicle who had an active lease issued by VW Credit, Inc. as of September 18, 2015 and purchased the Eligible Vehicle previously leased by that owner after June 28, 2016 shall be an Eligible Lessee.  For avoidance of doubt, an Eligible Owner ceases to be an Eligible Owner if he transfers ownership of the Eligible Vehicle to a third party on or after June 28, 2016; and a third party who acquires ownership of an Eligible Vehicle on or after June 28, 2016 thereby becomes an Eligible Owner if that third party otherwise meets the definition of an Eligible Owner.  An owner of an Eligible Vehicle will not qualify as an Eligible Owner while the Eligible Vehicle is under lease to any third party, although any such owner, including any leasing company other than VW Credit, Inc., who otherwise meets the definition of an Eligible Owner would become an Eligible Owner if such lease has been canceled or terminated and the owner has taken possession of the vehicle.  In exceptional cases, specific

- 6 -

arrangements may be made with the leasing company, in consultation with the Claims Supervisor, such that, without canceling or terminating the lease, the leasing company may be treated as an Eligible Owner and obtain an Approved Emissions Modification and Approved Emissions Modification Restitution.

S.      "**Eligible Owner Non-Operable Restitution**" means the monetary compensation that Defendant will pay to Eligible Owners under the Settlement Program whose vehicle is Operable as of the earlier of the date set by the Court for consumers to opt out of the Class Action or the Effective Date, but which ceases to be Operable before the vehicle can be surrendered for a Buyback or receive an Approved Emissions Modification, specified in the second column of Attachment 1A.

T.      "**Eligible Seller**" means a person who purchased or otherwise acquired an Eligible Vehicle on or before September 18, 2015 and sold or otherwise transferred ownership of such vehicle after September 18, 2015 but before June 28, 2016.  For avoidance of doubt, Eligible Seller includes any owner whose Eligible Vehicle was totaled and who consequently transferred title of their vehicle to an insurance company on or after September 18, 2015, but before June 28, 2016.

U.      "**Eligible Seller Restitution**" means the monetary compensation that Defendant will pay to Eligible Sellers who timely file a claim application under and participate in the Settlement Program, equal to 50% of the amount specified in the second column of Attachment 1A for the Eligible Seller's Eligible Vehicle.  Eligible Seller Restitution shall be paid from funds set aside in accordance with the Settlement Program.

V.      "**Eligible Vehicle**" means Model Year 2009 through 2015 Volkswagen light-duty vehicles equipped with 2.0-liter TDI engines that are (1) in the table immediately below this

paragraph; (2) registered with a state Department of Motor Vehicles or equivalent agency or held

by bill of sale by a non-Volkswagen Dealer in the United States or its territories as of June 28,

2016; (3) for an Eligible Owner, is currently Operable or ceases to be Operable after the date set

by the Court for consumers to opt out of the Class Action or the Effective Date, whichever is

earlier; and (4) have not been modified pursuant to an Approved Emissions Modification.

Eligible Vehicle excludes any Volkswagen or Audi vehicle that was never sold in the United

States or its territories.

| Model Year | Make and Model(s) |
|------------|-------------------|
| 2009 | VW Jetta, VW Jetta SportWagen |
| 2010 | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2011 | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2012 | VW Passat |
| 2013 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen, Audi A3 |
| 2013 | VW Passat |
| 2014 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta SportWagen |
| 2014 | VW Passat |
| 2015 | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf SportWagen, VW Jetta, VW Passat, Audi A3 |

W.      "**Escrow Account**" means the sole escrow account created under the Settlement

Program and managed by the Escrow Agent.

X.      "**Escrow Agent**" means the entity to address and hold for distribution the funds

identified in the Class Action Agreement pursuant to the terms of the Escrow

Agreement.  Subject to approval by the Court, Citibank Private Bank shall serve as Escrow

Agent.

Y.      "**Escrow Agreement**" means the agreement pursuant to the Class Action

Settlement Agreement that specifies the terms and conditions for any release of funds from the

- 8 -

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)

[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

Escrow Account.

Z.       "**Funding Pool**" means, for purposes of this Order and the Settlement Program, the sole funding pool from which Eligible Owners, Eligible Lessees, and Eligible Sellers will be compensated.  The Funding Pool is based on an assumed 100% consumer participation rate and an assumed 100% Buyback of all purchased Eligible Vehicles and 100% Lease Termination of all leased Eligible Vehicles.  Upon completion of the Settlement Program, Volkswagen will be entitled to retain any unspent portion of the Funding Pool.

AA.       "**Generation 1**" means the following Eligible Vehicles with model years: Volkswagen Jetta (2009-2014), Jetta SportWagen (2009-2014), Golf (2010-2014), Beetle (2013-2014), Beetle Convertible (2013-2014), and Audi A3 (2010-2013).

BB.       "**Generation 2**" means the following Eligible Vehicles with model years: Volkswagen Passat (2012-2014).

CC.       "**Generation 3**" means the following model year 2015 Eligible Vehicles: Volkswagen Jetta, Golf, Golf SportWagen, Beetle, Beetle Convertible, Passat, and Audi A3.

DD.       "**Holidays**" means the following days:  New Year's Day; Martin Luther King, Jr. Day; Easter Sunday; Memorial Day; Independence Day; Labor Day; day before Thanksgiving; Thanksgiving Day; day after Thanksgiving; Christmas Eve; Christmas Day; day after Christmas; and New Year's Eve.

EE.       "**Lease Termination**" means the process by which an Eligible Lessee may have the lease for that lessee's Eligible Vehicle terminated, without paying an early termination penalty, as described in Section VIII.A.

FF.       "**Loan Obligation**" means any debt incurred by an Eligible Owner and secured by an Eligible Vehicle, whether through VW Credit, Inc. or any other lender.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

GG.    "**Means and Instrumentalities**" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional materials, or sales training materials for use by a Volkswagen Dealer in marketing a product or service.

HH.    "**Mileage Adjustment**" means the positive or negative dollar adjustment specified in Attachments 2A through 2C.

II.    "**Operable**" means that the vehicle so described can be driven under its own 2.0-liter TDI engine power.  A vehicle is not Operable if it had a branded title of "Assembled," "Dismantled," "Flood," "Junk," "Rebuilt," "Reconstructed," or "Salvaged" on September 18, 2015, and was acquired by any person or entity from a junkyard or salvage yard after September 18, 2015.

JJ.    "**Post-September 2015 Owner Adjustment**" means the additional sum, if any exists, that must be offered to Eligible Owners who purchased an Eligible Vehicle after September 18, 2015 but before June 28, 2016, and who elect a Buyback or an Approved Emissions Modification under the Settlement Program.  The Post-September 2015 Owner Adjustment is equal to the Eligible Seller Restitution funds for an owner's Eligible Vehicle multiplied by the percentage of all funds set aside for Eligible Seller Restitution that are not claimed by Eligible Sellers, out of the total funds available for Eligible Seller Restitution.

KK.    "**Post-September 2015 Owner Restitution**" means the monetary compensation that Defendant will pay to Eligible Owners who purchased an Eligible Vehicle after September 18, 2015 but before June 28, 2016, and who elect a Buyback or an Approved Emissions Modification under the Settlement Program.  The Post-September Owner Restitution is the sum of the following:  (1) the Buyback Restitution amount or Approved Emissions Modification Restitution amount, as appropriate, for the Eligible Vehicle; (2) minus 50% of the

Approved Emissions Modification Restitution amount (the amount specified in the second

column of Attachment 1A or 1C); plus (3) a Post-September 2015 Owner Adjustment, if any.

LL. "**Related Orders**" means the DOJ Consent Decree and Class Action Settlement

Agreement.

MM. "**Settlement Program**" means the overall program, rights, and obligations

created under this Order and the related Class Action Settlement Agreement to provide notice

and restitution to Eligible Consumers.

NN. "**Volkswagen Dealer**" means any of Defendant's authorized Volkswagen or Audi

dealers located in the United States or its territories evidenced by a current and valid

Volkswagen Dealer Agreement or Audi Dealer Agreement.

OO. "**VW Credit, Inc.**" means VW Credit, Inc., including VW Credit Inc. d/b/a

Volkswagen Credit and Audi Financial Services.

## ORDER

### I.     BAN ON UNFAIR PRACTICES

IT IS ORDERED that Defendant is permanently restrained and enjoined from

advertising, marketing, offering for sale, selling, offering for lease, leasing, or distributing, or

assisting others in the advertising, marketing, offering for sale, selling, offering for lease, leasing,

or distributing in the United States or its territories any vehicle that contains a Defeat Device.

*Provided, however*, that in any country other than the United States or its territories that has a

different definition of a defeat device, or substantially similar device, for the purposes of this

provision, that definition shall govern.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

1
2

## II.        PROHIBITION AGAINST MISREPRESENTATIONS

3        IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees,

4   and attorneys, and all other persons in active concert or participation with any of them, who

5   receive actual notice of this Order, whether acting directly or indirectly, in connection with

6   advertising, marketing, offering for sale, selling, offering for lease, leasing, or distributing any

7   good or service, are permanently restrained and enjoined from, expressly or by implication,

8   including through the use of a product name, endorsement, depiction, or illustration, materially:

9

10        A.        Misrepresenting or assisting others in misrepresenting that the product or service

11   has low emissions, lower emissions than other vehicles, or a specific level(s) of emissions;

12        B.        Misrepresenting or assisting others in misrepresenting that the product or service

13   is environmentally friendly, eco-friendly, green, or words of similar import;

14

15        C.        Misrepresenting or assisting others in misrepresenting that the product or service

16   complies with any United States, state, or local emissions standard or regulation;

17        D.        With respect to environmental or engineering attributes, misrepresenting or

18   assisting others in misrepresenting the degree to which the product or service maintains its resale

19   value, comparative resale value, or any specific resale value; or

20

21        E.        Misrepresenting or assisting others in misrepresenting any other environmental

22   attribute or the value of a product or service.

23

## III.        MEANS AND INSTRUMENTALITIES

24

25        IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees,

26   and attorneys, and all other persons in active concert or participation with any of them, who

27   receive actual notice of this Order, whether acting directly or indirectly, in connection with

28   advertising, marketing, offering for sale, selling, offering for lease, leasing, or distributing any

- 12 -

good or service are permanently restrained and enjoined from providing to others the Means and Instrumentalities with which to make any representation prohibited by Section II above.

## IV.     MONETARY JUDGMENT

IT IS FURTHER ORDERED that the Court enters Judgment in the amount of ten billion and thirty-three million dollars ($10,033,000,000.00) against Defendant and in favor of the FTC. Defendant shall satisfy the Judgment fully by establishing a Funding Pool in this amount, and making the payments to consumers required by Sections VII, VIII, IX, X, and XI of this Order. Defendant may use satisfaction of this Order to meet its obligations under the DOJ Consent Decree and/or the Class Action Settlement Agreement to the extent provided for in those settlements.

## V.     ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.     Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order to any Eligible Consumer and may not seek the return of any assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the FTC to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Upon the filing of a petition for relief under the Bankruptcy Code by or against Defendant, or the filing of any similar federal or state insolvency proceeding by or against Defendant, the amount of  $10,033,000,000, less (i) $42,670,723 earmarked for payment of loan balances with excess negative equity as of the date of the preliminary approval of this Order (but only to the extent of payments actually made), (ii) $26,000,000 earmarked to pay a portion of the remaining future lease payments previously owed to lessors by lessees opting for Lease Termination (but only to the extent of payments actually made), and (iii) the sum of the total amount of all Consumer Payments Defendant has made to benefit Eligible Consumers, shall become immediately due and payable.

E.      Within 10 business days of the Effective Date, Defendant shall fund the  Escrow Account, which is the sole escrow account created under the Settlement Program, with the "Funding Amount," which funds shall be used, as necessary, for the sole purpose of compensating consumers who submit valid claims under the Settlement Program.  The initial Funding Amount shall be $1,500,000,000.  If and when the funding level of the Escrow Account reaches the "Minimum Balance," which shall initially be set at $1,250,000,000, the Escrow Agent shall alert Defendant, and Defendant shall, within 7 business days, deposit such funds in the Escrow Account as are necessary to bring the balance back to the Funding Amount.

F.      Every 6 months after the Escrow Account is first funded, the Funding Amount shall be adjusted to the lower of (i) the initial amount of $1,500,000,000 or (ii) 25% of the amount of the total Funding Pool that has not yet been spent, as verified by the Claims Supervisor.  In the event that the Funding Amount is adjusted, the minimum balance shall be adjusted proportionately.  For example, if the Funding Amount is adjusted to $900,000,000, the Minimum Balance shall be adjusted to $750,000,000.

- 14 -

G.      Within 30 days of the deadline for Eligible Consumers to submit claims under the Settlement Program, any funds in the Escrow Account, including all interest accrued, shall revert to Defendant.

H.      In the event that the Escrow Agreement terminates or is terminated for any reason prior to the deadline for Eligible Consumers to submit claims under the Settlement Program, any funds in the Escrow Account, including all interest accrued, shall revert to Defendant.

I.      Defendant must make all payments in accordance with this Order, provided that Defendant need not make these payments to those consumers who elect not to participate in the Settlement Program and are therefore eligible for the remedies set forth in Subsection 5.1 of Appendix A to the DOJ Consent Decree.

## VI.      NOTICE

IT IS FURTHER ORDERED that Defendant shall provide notice to Eligible Consumers of their rights under this Order as follows:

A.      Defendant shall make every reasonable effort to obtain mailing and email addresses of all Eligible Consumers, including by requesting available data from third parties.

B.      Within 5 business days of the Effective Date, Defendant shall send the notice in Attachment 4, or as otherwise agreed to in writing by the FTC, to each Eligible Consumer. Defendant shall send the notice in Attachment 4 to each Eligible Consumer for whom Defendant has a mailing address by First-Class postage pre-paid mail.  The notice shall not contain anything other than Attachment 4, unless otherwise agreed to by the FTC in writing.

C.      Defendant will mail the notice in Subsection B in an 8½ x 11-inch envelope.  The envelope shall contain the following format and text, unless otherwise approved by the FTC. The front of the envelope shall contain the Volkswagen or Audi logo and the following clear and

conspicuous text, as applicable:  "Volkswagen Settlements: Your Options" or "VW/Audi Settlements: Your Options."  The back of the envelope shall contain a large "Volkswagen" or "Audi" logo and the following clear and conspicuous text, as applicable:

       1.     "Information about your options under Volkswagen's Settlements" and "www.VWCourtSettlement.com"; or

       2.     "Information about your options under VW/Audi Settlements" and "www.VWCourtSettlement.com".

Defendant may not place any other information on the envelope other than that necessary to ensure delivery (such as consumer name, address and postage).

      D.     Within 5 business days of the Effective Date, Defendant shall send by email an html version of the notice in Attachment 4 in the body of an email (not as an attachment) to each Eligible Consumer for whom Defendant has an email address.  The email notice shall be substantially the same in text, format, and font as Attachment 4, and shall not contain any other information.

      E.     Within 5 business days of the Effective Date, Defendant shall distribute to all Volkswagen Dealers the notice in Attachment 5.

      F.     Immediately upon the Effective Date, Defendant shall post links to the websites created pursuant to Section XIII on the landing pages of www.vw.com and www.audiusa.com. The link must appear on the top portion of the webpage (so that no scrolling is required to view the text) and must state "Visit VWCourtSettlement.com for information on the TDI Settlement" or "TDI Settlement."  Any intermediate webpages, disclosures, or text related to the TDI Settlement between the landing pages of www.vw.com and www.audiusa.com and the websites

- 16 -

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)

[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

pursuant to Section XIII shall be approved by the FTC. The links shall remain posted for the duration of the Settlement Program.

G.      Defendant shall place advertisements in major national media outlets reasonably calculated to notify Eligible Consumers of their eligibility for compensation.

H.      At least 180 days prior to December 30, 2018, Defendant shall send every Eligible Consumer that has not elected a remedy or scheduled an appointment pursuant to Section XIII a notice by at least two different means reasonably calculated to reach the consumer (such as mail and email, or email and phone) ("Reminder Notice"). The Reminder Notice shall inform such Eligible Consumers of the deadlines to file a claim application and/or schedule an appointment in order to receive compensation pursuant to this Order and shall direct them to the claims website governed by Section XIII. At least 150 days prior to December 30, 2018, Defendant shall send a second Reminder Notice to those Eligible Consumers who have not yet submitted a claim application or scheduled an appointment pursuant to Section XIII following the first Reminder Notice.

I.      Within 10 business days of Defendant receiving EPA or CARB approval of any Approved Emissions Modification in accordance with Appendix B of the DOJ Consent Decree, Defendant shall send by First-Class postage pre-paid mail notice to Eligible Owners and Eligible Lessees informing them that there is an Approved Emissions Modification available for their Eligible Vehicle. Such notice shall be in a form approved by EPA or CARB pursuant to Section 3.2 of Appendix A to the DOJ Consent Decree. Such notice shall disclose the impacts of the Approved Emissions Modification on an Eligible Vehicle and inform affected Eligible Consumers that they still have a right to elect a Buyback or Lease Termination, as described in Sections VII and VIII.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

J.      Within 10 business days of Defendant (a) receiving a final notice of disapproval of a proposed emissions modification from EPA or CARB, (b) withdrawing any application for an Approved Emissions Modification, or (c) declining to submit any such application in accordance with Appendix B of the DOJ Consent Decree, Defendant shall send by First-Class postage pre-paid mail notice to Eligible Owners and Eligible Lessees that the proposed emissions modification for the affected Eligible Vehicles is not available.  Such notice shall be in a form approved by EPA or CARB pursuant to Section 3.2 of Appendix A to the DOJ Consent Decree. Such notice shall inform affected Eligible Consumers that they still have a right to elect a Buyback or Lease Termination, as described in Sections VII and VIII.

K.      Notwithstanding any other provision of this Order, with respect to all consumer-facing written, published, or online notices, internet content, disclosures, and disclaimers required under this Order, except those with substance uniquely tailored to an individual consumer (such as an email response to a particular consumer's question), those sent pursuant to Federal Rule of Civil Procedure 23, or a DOJ Emissions Modification Notice, Defendant must seek FTC approval of the communications.  Defendant must either:

1.      Obtain FTC approval in writing; or

2.      Ensure that the communications:  (a) are accurate, complete, non-misleading, and convey all material information; (b) convey all material information clearly and conspicuously; (c) emphasize (through underscoring, bolding, or other attention-getting devices) any deadlines that the consumer must meet; (d) use plain language; and (e) include an email address, web location, and telephone number where consumers can have questions answered.

- 18 -

## VII.    COMPENSATION FOR BUYBACK OF ELIGIBLE VEHICLES

IT IS FURTHER ORDERED that for each Eligible Owner who elects a Buyback, Defendant shall pay that Eligible Owner as set forth in this Order and Appendix A of the DOJ Consent Decree:

A.    Upon submission of an Eligible Owner's complete and valid claim application pursuant to Section XIII and surrender of the right, title, and interest in, and possession of, an Eligible Vehicle to Defendant at a Volkswagen Dealer (or other entity authorized by Defendant), Defendant shall pay to the Eligible Owner all amounts required by Subsections D, E, and F.  If an Eligible Owner elects a Buyback but does not possess title to the Eligible Vehicle, for title to the Eligible Vehicle to be transferred to Defendant, the Eligible Owner and Defendant must complete the steps required by Subsection G.1 and the claim application pursuant to Section XIII.

B.    Except as provided in Section XII, Defendant will complete a Buyback of an Eligible Vehicle within 90 days of an Eligible Owner's election to schedule an appointment for an approved Buyback.

C.    Each Eligible Owner may, in the alternative, elect to receive an Approved Emissions Modification and obtain Approved Emissions Modification Restitution pursuant to Section IX at any time before Defendant takes possession, title, and ownership of the Eligible Vehicle.

D.    Except as provided in Subsection F and G, and except for Eligible Owners who purchased their Eligible Vehicles after September 18, 2015 but before June 28, 2016, Defendant shall pay each Eligible Owner who elects to participate in the Buyback the sum of:

1.    The Buyback Restitution;

- 19 -

2.      Less any amounts paid to a lender in satisfaction of a Loan Obligation on the Eligible Vehicle pursuant to Subsection G, if applicable.

E.      For Eligible Owners who purchased their Eligible Vehicles after September 18, 2015 but before June 28, 2016, Defendant shall pay each Eligible Owner who elects to participate in the Buyback the sum of:

1.      The Post-September 2015 Owner Restitution;

2.      The Post-September 2015 Owner Adjustment, if any;

3.      Less any amounts paid to a lender in satisfaction of a Loan Obligation on the Eligible Vehicle pursuant to Subsection G, if applicable.

F.      For any Eligible Owner with an Eligible Vehicle that is Operable as of the date set by the Court for consumers to opt out of the Class Action or the Effective Date, whichever is earlier, but which ceases to be Operable before the vehicle can be brought in for a Buyback, upon submission of an Eligible Owner's complete and valid claim application pursuant to Section XIII and surrender of all right, title, and interest in, and possession of, the Eligible Vehicle to Defendant at a Volkswagen Dealer (or other entity authorized by Defendant), Defendant shall pay Eligible Owner Non-Operable Restitution to the Eligible Owner.  If an Eligible Owner does not possess title to the Eligible Vehicle, for title to the Eligible Vehicle to be transferred to Defendant, the Eligible Owner and Defendant must complete the steps required by Subsection G.1 and the claim application pursuant to Section XIII.

G.      For any Eligible Owner with an outstanding Loan Obligation for an Eligible Vehicle who elects a Buyback:

1.      Upon submission of an Eligible Owner's complete and valid claim application pursuant to Section XIII and surrender of all right, title, and

- 20 -

interest in, and possession of, an Eligible Vehicle to an entity authorized by Defendant, Defendant shall pay that Eligible Owner's lender the full amount required to pay off the outstanding Loan Obligation for the Eligible Vehicle, excluding any portion of the Loan Obligation that becomes delinquent after June 28, 2016 (and any related costs and fees) or any portion of the Loan Obligation, including new loans, incurred after June 28, 2016, up to 130% of the total compensation due to an Eligible Owner pursuant to Subsections D or E.  If the amount paid to the lender by Defendant under this provision is not sufficient to satisfy the outstanding Loan Obligation, the Eligible Owner must, at the time of the transfer of ownership and possession, pay any remaining balance of the Loan Obligation required to transfer all interest in, title to, and ownership and possession of the Eligible Vehicle to Defendant to elect the Buyback.

2. If the outstanding Loan Obligation is less than or equal to the total compensation to an Eligible Owner pursuant to Subsections D or E, upon submission of an Eligible Owner's complete and valid claim application pursuant to Section XIII and surrender of all right, title, and interest in, and possession of, an Eligible Vehicle to Defendant at a Volkswagen Dealer (or other entity authorized by Defendant), Defendant shall pay that Eligible Owner's lender the full amount required to pay off the outstanding Loan Obligation for the Eligible Vehicle, and shall pay the Eligible Owner the difference between the Loan Obligation and the compensation under Subsections D or E.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.      Defendant shall not charge Eligible Owners any consideration, including transactional or other fees, costs, or penalties for making the payments required by this Subsection.  Early termination or similar fees pursuant to or permitted by any Eligible Owner's contract with an affiliate of Defendant, including VW Credit, Inc., are not part of the Loan Obligation for purposes of Subsections G.1 and G.2 above, and Defendant may not use them as a basis to reduce the payments due to an Eligible Owner under this Section.

### VIII.   LEASE TERMINATION AND LESSEE COMPENSATION

IT IS FURTHER ORDERED that for each Eligible Lessee who has an active lease and who elects a Lease Termination, Defendant shall pay that Eligible Lessee as set forth in this Order and Appendix A of the DOJ Consent Decree:

A.      Upon submission of an Eligible Lessee's complete and valid claim application pursuant to Section XIII and surrender of an Eligible Vehicle to Defendant at a Volkswagen Dealer (or other entity authorized by Defendant), Defendant shall pay Eligible Lessee Restitution to the Eligible Lessee.  Defendant shall pay all amounts necessary to achieve a Lease Termination without penalty to the Eligible Lessee, including, without limitation, early termination fees owed to third parties.  Provided, however, that Defendant shall not be obligated to pay any Eligible Lessee Restitution Adjustments.  When calculating excess mileage fees, Defendant cannot pro rate the actual mileage on the Eligible Vehicle on the day of vehicle surrender, but must compare such actual mileage to that allowed under the full lease term.

- 22 -

B.      Except as provided in Section XII, Defendant shall complete a Lease Termination of an Eligible Vehicle within 45 days of an Eligible Lessee's election to schedule an appointment for an approved Lease Termination.

C.      Defendant will assume any remaining lease payments from the date of the completion of the process in Subsection A through the end of the lease agreement.

## IX.      COMPENSATION FOR APPROVED EMISSIONS MODIFICATIONS OF ELIGIBLE VEHICLES

IT IS FURTHER ORDERED that for each Eligible Owner or Eligible Lessee who is entitled to elect and elects an Approved Emissions Modification, Defendant shall provide free Approved Emissions Modifications that fully comply with this Order and Appendix B of the DOJ Consent Decree, and shall provide compensation as follows:

A.      Upon submission of an Eligible Owner's or Eligible Lessee's complete and valid claim application pursuant to Section XIII and completion of an Approved Emissions Modification by a Volkswagen Dealer (or other entity authorized by Defendant), Defendant shall pay the amounts required by Subsections B through E.

B.      Except for Eligible Owners who purchased Eligible Vehicles after September 18, 2015 but before June 28, 2016, Defendant shall pay Approved Emissions Modification Restitution to an Eligible Owner who elects to receive an Approved Emissions Modification.

C.      For Eligible Owners who purchased the Eligible Vehicle after September 18, 2015 but before June 28, 2016, and who elect to receive an Approved Emissions Modification, Defendant shall pay Post-September 2015 Owner Restitution to each such Eligible Owner.

D.      For Eligible Owners or Eligible Lessees of Generation 3 Eligible Vehicles who elect an Approved Emissions Modification, Defendant shall pay the Approved Emissions Modification Restitution amount in two stages in accordance with Section XIII.I.

- 23 -

E.      Defendant shall pay Lessee Restitution to each Eligible Lessee who elects to receive an Approved Emissions Modification and at the time the Eligible Vehicle is brought in for an Approved Emissions Modification (a) is the current lessee of an Eligible Vehicle and elects to continue an active lease for an Eligible Vehicle or (b) owns the Eligible Vehicle but did not acquire ownership of the Eligible Vehicle until after June 28, 2016.

F.      Except as provided in Section XII, Defendant shall complete an Approved Emissions Modification within 90 days of an Eligible Owner's or Eligible Lessee's election to schedule an appointment for an Approved Emissions Modification, following approval by EPA and CARB of an Approved Emissions Modification.

G.      Defendant shall provide a loaner vehicle at no cost to the consumer for any Approved Emissions Modification that is scheduled to take longer than 3 hours or that is not complete within 3 hours of the scheduled start of the appointment.  Defendant shall provide consumers receiving an Approved Emissions Modification such loaner vehicles at no cost for 24 hours after Defendant notifies them that the Approved Emissions Modification is complete.

## X.      COMPENSATION FOR ELIGIBLE LESSEES WHOSE LEASES TERMINATED AFTER SEPTEMBER 18, 2015

IT IS FURTHER ORDERED that for any Eligible Lessee who had an active lease as of September 18, 2015 but whose lease has since terminated and who returns or returned the Eligible Vehicle at the conclusion of the lease, upon submission of the Eligible Lessee's complete and valid claim application pursuant to Section XIII, Defendant shall pay Lessee Restitution to such an Eligible Lessee.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

1

2

## XI.    COMPENSATION FOR ELIGIBLE SELLERS

3

IT IS FURTHER ORDERED that Defendant shall provide compensation to Eligible

4

Sellers as follows:

5

6

A.    Upon submission of an Eligible Seller's complete and valid claim application

7

pursuant to Section XIII, Defendant shall pay Eligible Seller Restitution to each Eligible Seller

8

who elects to participate in the Settlement Program.

9

B.    Eligible Sellers shall have 45 days to file a claim from the earlier of the date on

10

which the Court grants preliminary approval of the Class Action Settlement Agreement or

11

provision of notice pursuant to Section VI, provided however, if preliminary approval is granted

12

by the Court on July 26, 2016, Eligible Sellers will have until September 16, 2016 to submit a

13

claim.

14

15

C.    In no event will Defendant pay more for a single vehicle than the amount

16

allocated to that vehicle for a Buyback, if the Eligible Owner chooses a Buyback, or an

17

Approved Emissions Modification, if the Eligible Owner chooses an Approved Emissions

18

Modification.  No additional funds will be made available by Defendant to compensate Eligible

19

20

Sellers.

21

## XII.    WARRANTY AND LEMON LAW PROTECTION FOR MODIFIED VEHICLES

22

IT IS FURTHER ORDERED that Defendant shall provide an Emission Control System

23

warranty and an Engine Long Block warranty (collectively, the "Extended Emissions Warranty")

24

25

for each Eligible Vehicle that undergoes an Approved Emissions Modification ("Modified

26

Vehicles"):

27

A.    The Extended Emissions Warranty shall cover all parts and labor, as well as the

28

cost or provision of a loaner vehicle for warranty service lasting longer than 3 hours.  Defendant

- 25 -

must not impose on consumers any fees or charges, and must pay any fees or charges imposed by Volkswagen Dealers related to the warranty service.

B.      The Emissions Control System warranty must cover all components which are replaced as part of the Approved Emissions Modification and any component which can reasonably be impacted by effects of the Approved Emissions Modification in accordance with Sections 3.9.1 and 4.3.10 of Appendix B of the DOJ Consent Decree, such as increased thermal load or cycling, increased soot load, increased use of EGR, increased DPF regeneration, and increased fuel injection pressure.  The Emission Control System warranty shall cover the following parts, as further specified in the applicable Extended Emissions Warranty Parts Coverage List that Volkswagen AG or Audi AG will submit with each emissions modification proposal submitted to EPA/CARB for review and approval of any proposed emissions modification:

1.      The entire exhaust after treatment system, including the DOC, the SCR catalyst (if applicable), the dosing injector and other DEF system components (if applicable), the NOx trap (if applicable), all sensors and actuators, and the exhaust flap;

2.      The entire fuel system, including the fuel pumps, high pressure common rail, fuel injectors, and all sensors and actuators;

3.      EGR system including the EGR valve, EGR cooler, EGR filter, all related hoses and pipes, and all sensors and actuators;

4.      The turbocharger;

5.      The OBD System and any malfunctions detected by the OBD System other than those related to the transmission; and

- 26 -

6.    The DPF.

C.    The Extended Emissions Warranty shall cover each and every DPF that has failed as a result of implementing any Approved Emissions Modification except as provided in Section 3.9.2 of Appendix B of the DOJ Consent Decree.

D.    The Engine Long Block warranty shall cover the engine sub-assembly that consists of the assembled block, crankshaft, cylinder head, camshaft, and valve train.

E.    The warranty period for the Extended Emissions Warranty shall be the longer of:

    1.    Measured from the Eligible Vehicle's initial sale or lease:  (a) for Generation 1 and 2, 10 years or 120,000 miles, whichever comes first; or (b) for Generation 3, 10 years or 150,000 miles, whichever comes first;

    2.    Measured from the date and mileage when an Approved Emissions Modification is implemented prior to any resale of the Eligible Vehicle:  4 years or 48,000 miles, whichever comes first; or

    3.    Measured from the date and mileage of the time of the first resale transaction after an Approved Emissions Modification:  4 years or 48,000 miles, whichever comes first; provided, however, that Subsection E.3 applies only to the first resale transaction after the modification to the first person who in good faith purchases the vehicle for purposes other than resale.

F.    Defendant shall make available online a searchable database in accordance with Section 3.9.6 of Appendix B of the DOJ Consent Decree that includes all Eligible Vehicles, and that includes all 2.0-liter vehicles possessed by Defendant, Volkswagen Dealers, or any dealer associated with Defendant, by which users, including Eligible Owners, Eligible Lessees, and

prospective purchasers, may conduct a free-of-charge search by vehicle VIN to determine whether the Extended Emissions Warranty and any additional warranty extensions apply to a specific vehicle.

G.      Defendant must also maintain a database in accordance with Section 3.9.7 of Appendix B of the DOJ Consent Decree that includes all Eligible Vehicles, and that includes all 2.0-liter vehicles possessed by Defendant, Volkswagen Dealers, or any dealer associated with Defendant, by which Volkswagen Dealers and Defendant's authorized service facilities shall search by vehicle VIN to determine whether the Extended Emissions Warranty and any additional warranty extensions apply to a specific Eligible Vehicle.

H.      If Defendant is required to provide additional warranty extensions pursuant to Appendix B of the DOJ Consent Decree, the additional warranty extensions shall extend the warranty periods specified in Subsection E.

I.      The Extended Emissions Warranty is associated with the vehicle, and remains available to any and all subsequent owners and operators.

J.      The Extended Emissions Warranty shall not supersede or void any outstanding warranty.  To the extent there is a conflict in any provision(s) of this warranty and any outstanding warranty, that conflict shall be resolved to the benefit of the consumer.

K.      The Extended Emissions Warranty shall not modify, limit, or affect any state, local, or federal legal rights available to the owners.

L.      Any waiver of any provision of the Extended Emissions Warranty by an owner is null and void.

M.      Defendant must reoffer and provide a Buyback or Lease Termination to any Eligible Owner or Eligible Lessee of a Modified Vehicle in the event that, during the 18 months

or 18,000 miles (whichever occurs first) following the completion of the Approved Emissions

Modification (the "Reoffer Period"):

       1.     Defendant fails to repair or remedy a confirmed mechanical failure or

malfunction covered by the Extended Emissions Warranty and associated

with the Approved Emissions Modification (a "Warrantable Failure") after

the Eligible Owner or Eligible Lessee physically presents the Modified

Vehicle to a Volkswagen Dealer for repair of the Warrantable Failure and:

     a.    the Warrantable Failure is unable to be remedied after making 4

separate service visits for the same Warrantable Failure during the

Reoffer Period; or

     b.    the Modified Vehicle with the Warrantable Failure is out of service

(in an inoperable condition) due to the Warrantable Failure for a

cumulative total of 30 days during the Reoffer Period.  For

avoidance of doubt, a Modified Vehicle shall not be deemed "out

of service" when, after diagnosing the Warrantable Failure, the

Volkswagen Dealer (or other entity authorized by Defendant)

returns or tenders the Modified Vehicle to the customer while the

Volkswagen Dealer (or other entity authorized by Defendant)

awaits necessary parts for the Warrantable Failure and the

Modified Vehicle remains Operable.

N.     If any such consumer is entitled to elect and elects a Buyback or Lease

Termination pursuant to Subsection M, the owner or lessee shall receive the Consumer Payments

that he or she would have received under a Buyback or Lease Termination at the time the

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)

[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

Eligible Owner or Eligible Lessee first requested the Approved Emissions Modification, less any

Buyback Restitution, Approved Emissions Modification Restitution or Lessee Restitution

amounts already received under the Settlement Program.  No Eligible Owner or Eligible Lessee

shall receive double-recovery of any portion of any Consumer Payment.

### XIII.   CLAIMS PROCESSING

IT IS FURTHER ORDERED that in implementing the remedies for consumers described

by this Order:

A.     On the Effective Date, Defendant shall maintain a claims administration website

with URLs:  VWCourtSettlement.com and AudiCourtSettlement.com.  The website shall have an

"En Español" link to a Spanish website that consists of a fully translated version of

VWCourtSettlement.com and AudiCourtSettlement.com.  The website must be publically

available on the Effective Date, and remain available for 5 years thereafter, or until all consumer

relief under this Order is complete, whichever is earlier.  In maintaining this website, Defendant

shall make all reasonable efforts to cause the purchase of the rights to all websites whose URLs

are common misspellings of these URLs to re-direct consumers to VWCourtSettlement.com and

AudiCourtSettlement.com.  The website shall:

1.     Be promoted by Defendant online, such as through banner ads, search

engine ads or social media;

2.     Include a copy of this Order, the DOJ Consent Decree and all consumer

notices required by this Order, except for the DOJ Emissions Modification

Notices, which must be made available pursuant to Subsection A.5;

3.     Include plain language descriptions of the options available to consumers

under this Order, including the information needed for Eligible Consumers

- 30 -

to make informed decisions about their election of remedies and all

deadlines related to the election of any remedy under this Order and the

Related Orders;

4.      Include information sufficient for consumers to determine if they may be

Eligible Sellers;

5.      Include a copy of or link to the DOJ Emissions Modification Notices

within 10 business days of receiving EPA/CARB notice of approval or

disapproval, withdrawing any application for an Approved Emissions

Modification or declining to submit an application for an Approved

Emissions Modification.  Provided, however, that nothing herein

precludes Defendant from providing additional information concerning the

effect an Approved Emissions Modification will have on an Eligible

Vehicle;

6.      List the information and documentation that Eligible Consumers must

submit to establish eligibility for a remedy under the Settlement Program,

including instructions for obtaining and providing such information and

submitting such documentation by electronic upload, fax, or mail;

7.      Explain to consumers how and where to locate a Vehicle Identification

Number (VIN) for their vehicle;

8.      Provide a simple, easy-to-use mechanism for consumers to determine

whether their vehicle is eligible for the Settlement Program by entering a

VIN, and to determine the compensation to which they are entitled under

each available option by entering their name, contact information

- 31 -

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)

[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

(including mailing address, telephone number and email), address of vehicle registration, VIN, current Eligible Vehicle mileage, and other information necessary to process the claim;

9.     Explain the specific effect that additional mileage will have on an Eligible Consumer's compensation;

10.    Provide a simple, easy-to-use mechanism for consumers to elect to receive updates by email about the availability of, and reminders about, appointments for any remedy; the availability (or non-availability) of an Approved Emissions Modification for their vehicle; and the status of any claim, including additional documentation or other information needed to process the claim;

11.    Provide consumers with a simple mechanism to elect and apply for any remedy available to them, and for Eligible Consumers to schedule an appointment pursuant to Subsection C.4, below; and

12.    Not contain any promotional materials, any information other than that needed to comply with this Order, or anything that contradicts, mitigates, or is inconsistent with, the information required by this Section.

B.     On the Effective Date, Defendant shall establish a toll-free telephone number that shall remain available until all consumer relief under this Order is complete.  With the exception of Holidays, Defendant shall ensure that the toll-free number is promptly answered seven days a week from 7:00 am eastern time to 11:00 pm eastern time by representatives that Defendant has adequately trained to accurately and clearly answer all reasonable consumer questions regarding the Settlement Program.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

C.    Defendant shall administer the claims administration process efficiently, expeditiously, and transparently, including by:

    1.    Accepting claim applications and documentation submitted by mail, fax, and via the claims website;

    2.    Processing all claims applications and, within 10 business days, or more quickly if reasonable, either (a) notifying consumers that their claim application is complete because it contains all information necessary to determine eligibility, or (b) notifying consumers of any claim application that is deemed deficient, the reasons for the deficiency, and providing clear instructions on how to cure it.  If Defendant notifies a consumer that their claim application is deficient, Defendant shall have 10 business days from resubmission of the claims application to notify such consumer whether his or her application is complete;

    3.    Notifying consumers whether they are eligible for their elected remedy within 10 business days, or more quickly if reasonable, of receiving a completed application;

    4.    Immediately upon either notification that a consumer is eligible under Subsection C.3 above or the Effective Date, whichever is later, allowing that Eligible Consumer to schedule a Buyback, Lease Termination, or Approved Emissions Modification at any Volkswagen Dealer (or other entity authorized by Defendant) of the Eligible Consumer's choosing. Defendant shall provide Eligible Consumers the ability to choose from at least three appointment dates, at different times of the day, on different

days of the week, each of which is within 90 days of notification under

Subsection C.3 or the Effective Date, whichever is later.  Defendant shall

provide consumers with the ability to reschedule their appointment within

90 days of the rescheduling date using the same process;

5.    Providing consumers with at least one reminder prior to their scheduled

appointment;

6.    Allowing consumers to change their elected remedy at any time before the

Eligible Consumer's appointment for a Buyback or Lease Termination or

service visit for an Approved Emissions Modification.  If an Eligible

Consumer changes their elected remedy, Defendant shall provide

consumers with the ability to schedule their appointment for the newly

chosen remedy within 90 days of the consumer notifying Defendant of the

change in elected remedy using the process in Subsection C.4;

7.    Establishing reasonable procedures designed to provide a process for

certain Eligible Consumers whose status creates an undue burden to

participate in the claims process (due to military service overseas or

government assignment overseas) by assigning their rights to participate in

the Settlement Program on behalf of the Eligible Consumer upon

providing acceptable proof of the military service overseas or government

assignment overseas.

8.    Upon payment to each Eligible Consumer, providing an itemized receipt

showing the amount paid to the consumer and any applicable adjustments

pursuant to this Order as well as an explanation of any such adjustments;

- 34 -

9.      Not requesting any information from any consumer beyond what is necessary to process a claim application; and

10.      Taking all reasonable efforts to protect data consumers provide for any purpose related to this Order.  Defendant cannot use data provided by consumers for participation in the Settlement Program for any purpose other than implementing the Settlement Program.

D.      Defendant shall offer each Eligible Consumer who elects to participate in the Settlement Program the option to receive payment by check or by Electronic Funds Transfer ("EFT").  Defendant shall notify Eligible Consumers of the timing of each payment method as well as the specific impact that a positive or negative mileage adjustment will have on the timing of such payment.

E.      For Eligible Owners with an outstanding Loan Obligation, payment shall be sent to that Eligible Owner's lender within 5 business days of completion of the Eligible Owner's Buyback.

F.      For Eligible Owners who elect a Buyback, upon receipt of the title to the Eligible Vehicle by Defendant or a Volkswagen Dealer (or other entity authorized by Defendant) and the surrender of the Eligible Vehicle to a Volkswagen Dealer (or other entity authorized by Defendant), (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be provided immediately at the time of the Buyback.  Provided, however, for an Eligible Owner who has elected to receive payment by check, (a) if the vehicle is subject to a positive Mileage Adjustment, Defendant shall send an additional check within 3 banking days for the amount of the positive adjustment or (b) if the Eligible Vehicle is subject to a negative Mileage Adjustment,

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

a check will not be provided immediately and instead Defendant will issue and send a new check within 3 banking days for the adjusted amount.

G.      For Eligible Lessees who elect a Lease Termination, upon surrender of the Eligible Vehicle to a Volkswagen Dealer (or other entity authorized by Defendant), (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be provided immediately at the time of surrender.  If the vehicle is subject to a negative mileage adjustment pursuant to the lease contract, a check will not be provided immediately and instead Defendant will issue and send a new check within 3 banking days for the adjusted amount.

H.      For Eligible Owners or Eligible Lessees who elect an Approved Emissions Modification, upon completion of the Approved Emissions Modification by a Volkswagen Dealer (or other entity authorized by Defendant), (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be mailed within 3 banking days.

I.      Provided however, that for Eligible Owners or Eligible Lessees of Generation 3 Eligible Vehicles who elect an Approved Emissions Modification, upon completion of the first stage of the Approved Emissions Modification pursuant to Section 3.1 of Appendix B of the DOJ Consent Decree by a Volkswagen Dealer (or other entity authorized by Defendant), (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be mailed within 3 banking days in the amount of 2/3 of the Approved Emissions Modification Restitution amount.  Upon completion of the second stage of the Approved Emissions Modification pursuant to Section 3.4.1 of Appendix B of the DOJ Consent Decree by a Volkswagen Dealer (or other entity authorized by Defendant), (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be mailed within 3 banking days for the remaining 1/3 of the Approved Emissions Modification Restitution amount for the Eligible Vehicle.  For Eligible Sellers, upon approval of

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

an Eligible Seller's claim, (i) an EFT shall be submitted within 3 banking days or (ii) a check shall be mailed within 3 banking days.

J.      Through the claims administration process implemented pursuant to this Order, Defendant may not favor a remedy under this Order over any other remedy in any of the following ways:

1.      by presenting alternative remedies in a manner that discourages the selection of one remedy (or remedies); or

2.      by making the process to obtain a remedy unnecessarily difficult relative to others.

K.      Notwithstanding anything else in this Order, the Buyback and Lease Termination offers required under Sections VII and VIII of this Order, shall be available to Eligible Owners and Eligible Lessees beginning within 5 business days from the Effective Date and shall remain open until at least 2 years after the Effective Date.  Provided, however, that an Eligible Consumer must complete a claims application no later than September 1, 2018 to participate in the Settlement Program.

## XIV.   COURT-APPOINTED CLAIMS SUPERVISOR

IT IS FURTHER ORDERED that based upon recommendations submitted to this Court by Defendant and the FTC, the Court hereby appoints Ankura Consulting Group, LLC as the Claims Supervisor for Defendant.  In acting under this Order, the Claims Supervisor is an agent of this Court, and solely the agent of this Court, and shall be accountable directly to this Court. With the exception of review of claims pursuant to Subsection A, below, the Claims Supervisor shall not perform any of the claims processing functions set forth in Section XIII.  The Claims

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

Supervisor has the following power and authority to monitor Defendant's compliance with the Settlement Program.

A.      The Claims Supervisor shall review claims for compensation under this Order and shall review the claims administration process to ensure that it is conducted in accord with this Order, including ensuring that:

1.      Compensation is calculated and paid in compliance with this Order;

2.      Claims are processed in an efficient and consistent manner;

3.      The calculations of approved payments to Eligible Consumers comply with the Settlement Program; and

4.      Determinations that claims are "ineligible" are proper under the Settlement Program.

B.      Within one month from the date of entry of this Order and every 3 months thereafter for 3 years (until such time determined pursuant to Subsection C below), the Claims Supervisor shall submit a report to the Court, with copies to the FTC and Defendant, concerning Defendant's performance of its obligations under this Order, including:

1.      The progress of the Settlement Program, including but not limited to the participation rate in any Buyback, Lease Termination, or Approved Emissions Modification;

2.      The length of time for Eligible Consumers to receive any Consumer Payment;

3.      Any complaints regarding Eligible Consumers' efforts to elect or participate in any Settlement Program option; and

4.      The Claims Supervisor's review of ineligible claims.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

C. The Claims Supervisor shall serve until December 31, 2018, unless ordered by this Court to continue.

D. Defendant shall in a timely manner provide the Claims Supervisor full access to all documents and information necessary for the Claims Supervisor to fulfill the Claims Supervisor's duties pursuant to this Order.

E. Defendant shall fully cooperate with any reasonable request of the Claims Supervisor and shall take no action to interfere with or impede the Claims Supervisor's ability to monitor Defendant's compliance with this Order.

F. The Claims Supervisor shall provide the FTC accounting or other information related to compliance with Sections VI through XIII within 10 business days of a request, unless a longer time is agreed to by an FTC representative in writing.

G. Defendant is responsible for all costs and fees relating to the Claims Supervisor. Defendant and the FTC may agree, or the Claims Supervisor may seek Court approval to employ, at Defendant's expense, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Claims Supervisor's duties and responsibilities.

## XV.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A. Defendant, within 7 days of entry of this Order, must submit to the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 5 years after entry of this Order Defendant must deliver a copy of this Order to:  (1) all principals, officers, directors; (2) all employees, agents, and representatives who have

responsibilities for any of Defendant's advertising or marketing or have supervisory

responsibilities related to the subject matter of Sections I through III; (3) all employees, agents,

and representatives involved in carrying out the Settlement Program as described in Sections VI

through XIII; and (4) any business entity resulting from any change in structure as set forth in

Section XVI.  Delivery must occur within 7 days of entry of this Order for current personnel.

For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity that Defendant employs and to which Defendant

delivered a copy of this Order, Defendant will request, within 30 days, a signed and dated

acknowledgment of receipt of this Order and Defendant shall create and maintain records

sufficient to establish that the Order was sent in a way reasonably calculated to effect delivery.

For all other individuals or entities to which Defendant delivered a copy of this Order pursuant to

Subsection B, Defendant shall create and maintain records sufficient to establish that the Order

was sent in a way reasonably calculated to effect delivery.

## XVI.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the FTC:

A.      One year after entry of this Order, Defendant must submit a compliance report,

sworn under penalty of perjury:

1.      Defendant must:  (a) identify the primary physical, postal, and email

address and telephone number, as designated points of contact, which

representatives of the FTC may use to communicate with Defendant;

(b) describe in detail whether and how Defendant is in compliance with

each Section of this Order; and (c) provide a copy of each order

- 40 -

acknowledgment obtained pursuant to this Order, unless previously

submitted to the FTC.

B.     For 10 years after entry of this Order, Defendant must submit a compliance

notice, sworn under penalty of perjury, within 14 days of any change in the following:  (a) any

designated point of contact; or (b) the structure of any entity that Defendant has any ownership

interest in or controls directly or indirectly that may affect compliance obligations arising under

this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary that

engages in any acts or practices subject to this Order.

C.     Defendant must submit to the FTC notice of the filing of any bankruptcy petition,

insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its

filing.

D.     Any submission to the FTC required by this Order to be sworn under penalty of

perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I

declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full

name, title (if applicable), and signature.

E.     Any information Defendant submits pursuant to this section will be treated in

accordance with Section 21 of the FTC Act.

F.     Unless otherwise directed by an FTC representative in writing, all submissions to

the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier

(not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer

Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.

The subject line must begin:  FTC v. Volkswagen Group of America, Inc., X160039.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

## XVII.  RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, Defendant must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold in accordance with the International Financial Reporting Standards;

B.      Personnel records showing, for each person with responsibilities for any of Defendant's advertising or marketing or with supervisory responsibilities related to the subject matter of Sections I through III, whether as an employee or otherwise, that person's:  name; addresses; telephone number; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints related to Sections I through III of this Order, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with Sections I through III of this Order, including all submissions to the FTC;

E.      A copy of each substantively unique new vehicle advertisements or other new vehicle marketing material Defendant distributed or paid to have distributed in the United States relating to Volkswagen or Audi vehicles (for purposes of this Subsection, an advertisement or marketing material is "substantively unique" if it conveys different claims than other material, or conveys claims differently than other material); and

F.      All materials relied upon to make any representation about an environmental attribute or resale value in the materials covered by Subsection E.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

## XVIII.  COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.     Within 30 days of receipt of a written request from a representative of the FTC, Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The FTC also is authorized without further leave of court, to use any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that Defendant, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order including one or more of the protections set forth in Federal Rule of Civil Procedure 26(c).  Defendant may assert any and all rights or privileges in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any other applicable law.

B.      For matters concerning this Order, the FTC is authorized to communicate directly with Defendant.  Defendant must permit representatives of the FTC to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.     The FTC may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.  Defendant may assert any and all defenses, rights, or privileges available to it.

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* No. 3:15-md-2672 (CRB) (JSC)
[Proposed] Partial Stipulated Order for Permanent Injunction and Monetary Judgment

## XIX.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated: _____, 2016

_____
CHARLES R. BREYER
United States District Judge

- 44 -

**SO STIPULATED AND AGREED:**

Dated: June ___, 2016

FOR PLAINTIFF
FEDERAL TRADE COMMISSION


JONATHAN COHEN
MICHELLE L. SCHAEFFER
MEGAN A. BARTLEY
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
(202) 326-2551 (Cohen); -3515 (Schaefer);
-3424 (Bartley); -3197 (fax)
jcohen2@ftc.gov; mschaefer@ftc.gov;
mbartley@ftc.gov
*Counsel for Federal Trade Commission*

- 45 -

1

2  **SO STIPULATED AND AGREED:**

3

4                                        FOR DEFENDANT VOLKSWAGEN GROUP
                                         OF AMERICA, INC. (ALSO D/B/A
5                                        VOLKSWAGEN OF AMERICA, INC., ALSO
                                         D/B/A AUDI OF AMERICA, INC.)
6

7

8

9  Dated: June 27, 2016

10                                       DAVID DETWEILER
                                         VOLKSWAGEN GROUP OF AMERICA, INC.
11                                       2200 Ferdinand Porsche Drive
                                         Herndon, Virginia 20171
12                                       *As an Officer of Volkswagen Group of America, Inc.*

13

14

15

16  Dated: June 27, 2016

17                                       ROBERT J. GIUFFRA, JR.
                                         SHARON L. NELLES
18                                       SULLIVAN & CROMWELL LLP
                                         125 Broad Street
19                                       New York, New York 10004
                                         Telephone: (212) 558-4000
20                                       Facsimile: (212) 558-3358
                                         giuffrar@sullcrom.com
21                                       nelless@sullcrom.com
                                         *Counsel for Volkswagen Group of America, Inc.*
22

23

24

25

26

27

28

- 46 -

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on June 28, 2016, I caused to be served true copies of the foregoing
FTC Proposed Partial Stipulated Order for Permanent Injunction and Monetary Judgement by
electronic means by filing such documents through the Court's Electronic Case Filing System:

4

5

6                                        Jonathan Cohen (jcohen2@ftc.gov)
                                         Attorney for Plaintiff
7                                        Federal Trade Commission

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       47